EDWARDS v. BODKIN.

(Circuit Court of Appeals, Ninth Circuit. March 8, 1918.)

No. 3046.

1. APPEAL AND ERROR ⟨⟩773(3)—DISMISSAL—BRIEFS.
    Where plaintiff prosecuted an appeal in forma pauperis under permission of an order of the Circuit Court of Appeals relaxing rules 23 and 24 (150 Fed. cxiv, cxv, 79 C. C. A. cxiv, cxv), the appeal cannot be dismissed because no printed brief containing a concise abstract or statement of the case had been filed or served as required by such rules.

2. APPEAL AND ERROR ⟨⟩724(1)—SPECIFICATIONS OF ERROR—EQUITY.
    While in an equity case the specifications of error should state as particularly as may be in what respect the decree is alleged to be erroneous, the rule should be relaxed in favor of plaintiff, prosecuting an appeal in personam pursuant to an order allowing him to appeal in forma pauperis.

3. APPEAL AND ERROR ⟨⟩397—NOTICE OF APPEAL—CITATION.
    Where an appeal was allowed in open court, and was perfected during the term at which the appeal was rendered, there was sufficient notice of appeal without any citation.

4. EQUITY ⟨⟩363—PLEADING—MOTION TO DISMISS.
    A motion to dismiss a bill of complaint admits the truth of its material allegations.

5. PUBLIC LANDS ⟨⟩103(1)—CONTESTS—INITIATIVE.
    A notice of contest against an entryman on public lands, in support of which the contestant made oath that he did not know and had no means of knowing the facts, is insufficient to initiate a contest.

⟨⟩For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

**6.** PUBLIC LANDS ⬤➾106(2)—LAND DEPARTMENT—DECISION.

While a decision of the Land Department that an entry was abandoned is conclusive as to the facts, it may be inquired into by the courts as a question of law.

**7.** PUBLIC LANDS ⬤➾10—ENTRIES—ABANDONMENT.

The failure of an entryman on arid lands withdrawn under Act June 17, 1902, c. 1093, § 3, 32 Stat. 388 (Comp. St. 1916, § 4702), as susceptible of irrigation, to continuously reside upon or cultivate the land, which, though later withdrawn for irrigation works, was finally released, during the time when no reclamation project had been devised or installed, cannot be deemed an abandonment; Act June 27, 1906, c. 3559, § 5, 34 Stat. 520 (Comp. St. 1916, § 4724), expressly saving such cases, and the entryman having prepared the land for cultivation and established a residence thereon.

**8.** PUBLIC LANDS ⬤➾96—REGULATIONS—AUTHORITY OF SECRETARY OF INTERIOR.

While Reclamation Act, § 10, authorizes the Secretary of the Interior to make such regulations as may be necessary and proper to carry the act into full force and effect, he is not authorized to amend, modify, or change Act May 14, 1880, c. 89, § 2, 21 Stat. 141 (Comp. St. 1916, § 4537), fixing the rights of a successful contestant, who has secured the cancellation of any pre-emption, homestead, or timber culture entry.

**9.** PUBLIC LANDS ⬤➾102—REGULATIONS—AUTHORITY OF SECRETARY OF INTERIOR.

Any right under regulation 7 of June 6, 1905, issued by the Secretary of the Interior under Reclamation Act June 17, 1902, § 10, which a successful contestant of a homestead entry on land withdrawn as susceptible of irrigation might have had, was lost by the promulgation of regulation 6 of January 19, 1909, declaring that, where a contest has been allowed prior to a first form withdrawal, the withdrawal, if made before the termination of the contest or entry of the successful contestant, will terminate all rights acquired by such contest, where the land, before termination of the contest or entry by contestant, was withdrawn under the first form for irrigation works, and the contestant had only a preference.

**10.** PUBLIC LANDS ⬤➾46—SOLDIERS' SCRIP—RIGHTS.

Scrip issued under the law and regulations relating to soldiers' additional homestead rights is subject to the regulations of the Land Department, and also to the equitable rule that an actual settler is to be preferred over claimants who seek to assert scrip rights to the public domain.

**11.** PUBLIC LANDS ⬤➾103(1)—PROTESTS—HEARING.

Where a contest against an actual entryman under the homestead laws was sustained, the entryman's protest against the contestant's lieu land selection should not be denied, on the ground that he had not served the contestant with a copy of the appeal, for, while the decision of the Land Department on questions of fact is final, it is based on the presupposition of a hearing in good faith.

Appeal from the District Court of the United States for the Southern Division of the Southern District of California.

Bill of complaint by William B. Edwards against Patrick H. Bodkin, to have defendant declared a trustee holding title to certain lands for the benefit of plaintiff. From a decree dismissing the bill, without leave to amend, plaintiff appeals. Reversed, with directions.

Wm. B. Edwards, of Redlands, Cal., in pro. per.

Duke Stone, of Los Angeles, Cal., for appellee.

Before GILBERT, ROSS, and MORROW, Circuit Judges.

⬤➾For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

MORROW, Circuit Judge. This is an appeal from a decree dismissing a bill of complaint without leave to amend. We shall designate the parties here as plaintiff and defendant, as they were in the court below.

[1, 2] 1. The defendant has interposed a motion to dismiss the appeal on the ground that no printed brief has been filed or served containing a concise abstract or statement of the case, presenting succinctly the questions involved in the manner in which they are raised; that no specification of errors relied upon is stated, and no citation has been issued and served upon the defendant as required by the rules of this court.

The plaintiff is prosecuting this appeal in forma pauperis, under the permission of an order of this court relaxing rules 23 and 24 (150 Fed. cxiv, cxv, 79 C. C. A. cxiv, cxv) requiring the printing of the transcript of record and briefs. In an equity case the rule requires that the specifications shall state as particularly as may be in what respect the decree is alleged to be erroneous. We find no special difficulty in understanding the questions involved in the controversy, and we think the plaintiff, who is prosecuting this appeal in personam, has stated the case as well as he knows how, and under the circumstances the rule in this respect should also be relaxed in his favor.

[3] The appeal appears to have been allowed in open court, and it was perfected during the term at which the decree was rendered. This was a sufficient notice of the appeal. Jacobs v. George, 150 U. S. 415, 14 Sup. Ct. 159, 37 L. Ed. 1127; Taylor v. Leesnitzer, 220 U. S. 91, 93, 31 Sup. Ct. 371, 55 L. Ed. 382.

[4] 2. The action is to have the defendant, to whom a patent has been issued by the Land Department of the government for a certain described tract of land originally within a reclamation reservation declared a trustee holding the title to such land for the benefit of the plaintiff. The motion admitted the truth of the material allegations of the complaint, and we must now read them as established facts, and determine whether or not they state a cause of action calling for equitable relief. Many of the allegations contained in the bill are irrelevant and immaterial to the questions to be determined, and will be so treated in our final conclusions.

The complaint is not a model of legal composition, but is an example of the difficulty to which judicial inquiry is sometimes subjected in getting at the real merits of a case, where the relevant and material facts are not fully or succinctly and plainly stated. In this respect the complaint in this case is exceptionally defective, and requires a restatement of the facts in an orderly sequence and with due regard to their logical and legal import.

The act of June 17, 1902 (32 Stat. 388, c. 1093 [Comp. St. 1916, §§ 4700–4708]), authorized the Secretary of the Interior to withdraw certain public lands of an arid or semiarid character from entry for irrigation purposes. The withdrawals provided in section 3 of the act were to embrace two distinct classes: First, public land required for any irrigation works contemplated under the provisions of the

act; second, public lands believed to be susceptible of irrigation from said works.

The first class has been designated by the Land Department as "withdrawals under the first form," and the second class as "withdrawals under the second form." In the withdrawal of lands under the first form there was no exception. All the lands described were withdrawn from public entry. In the withdrawal of lands under the second form there was an exception in favor of homesteads; that is to say, such lands were not withdrawn from public entry under the homestead laws, but were continued to be open to such entry, "subject to all the provisions, limitations, charges, terms and conditions" of the act.

On July 17, 1902, the Secretary of the Interior withdrew certain public lands in Southern California under the provisions of the act of June 17, 1902. The withdrawal was of the class of lands designated as "second form"; that is to say, lands believed to be susceptible of irrigation under the reclamation system provided by the act. These lands continued to be open to homestead settlement and entry, notwithstanding their withdrawal, and included, among others, the N. E. ¼ of section 11, township 7 S., range 2 E., S. B. M.

On December 1, 1902, and within six months after the passage of the act, the plaintiff made entry of this tract of land under the homestead and reclamation laws of the United States. He was at the time qualified in every way to make and perfect such entry, and the land entered was then unappropriated public lands of the United States and subject to such entry. Thereafter plaintiff complied with all of the requirements of the homestead and reclamation laws, made final proof of such compliance before the United States land office for that land district, proved such compliance by two creditable witnesses, who made oath to all the items required by law to be made, paid all the fees required by law to be paid prior to receiving a patent for the land, published in due form notice to all persons having or claiming to have a better right to such land than the plaintiff, and required such persons to appear and exhibit such claim of right. No person appeared at the time and place and offered evidence of a better or of any right adverse to plaintiff; nor was notice ever given to plaintiff by the land office that the proof submitted was defective in any way as to the special or any of the conditions under which the entry was made. But the Land Department, without regard to the premises, refused to consider such proof and to issue a patent to plaintiff for the land described. After making the proof required, the plaintiff continued to reside upon the land, to cultivate and improve it in accordance with the purpose he had in making the entry, and kept his claim for a patent continually before the Land Department as a claim of legal right.

From a map attached to the complaint it appears that the land entered by the plaintiff as a homestead is about 5 miles due west from the Colorado river. Between this land and the river is a tract of land of about 4,000 acres, stretching along the west bank of the river, north and south, for a distance of 14 or 15 miles, and about 4

miles in width at a point between plaintiff's land and the river. This large tract of land is designated on the map as the "Blythe Rancho," and it is owned in private estate. From a point on the Colorado river where the northern boundary of the rancho touches the river runs a canal in a southerly and westerly direction, across the rancho and the public lands, terminating in public lands about a mile north of plaintiff's land. This canal is called the "Blythe Canal." When plaintiff entered his homestead, this canal only required opening and extending to reclaim all the public lands withdrawn for that purpose in that locality. The public lands immediately to the west of the lands of the Blythe Rancho susceptible of reclamation by irrigation comprise about 6,000 acres, but the water for their irrigation must be carried from the Colorado river across the private lands mentioned to reach the public lands. Within 30 days after plaintiff had entered his homestead he established his residence on the land, taking work stock and tools to the land, and improving, clearing, and preparing the land for cultivation; but plaintiff was not then able or prepared, or had occasion to believe he would be required, to reside upon and cultivate the land continuously until some form of reclamation had been devised and installed for use.

On September 12, 1903, the Secretary of the Interior withdrew a tract of land under the first form which included plaintiff's homestead entry. This withdrawal, under the act of June 7, 1902, excluded homestead entries, and provided that the Secretary of the Interior should restore to public entry any of the lands so withdrawn when in his judgment such lands were not required for the purposes of the act. The facts stated in the complaint indicate that nothing was done by the government in perfecting a system of irrigation for these lands under either the first or second form of withdrawal, but the lands were held as withdrawn for nearly nine years, and during that time left open for the work of a private corporation called the "Land & Water Company," which had succeeded to the ownership of the lands of the Blythe Rancho, and contemplated a system of irrigation for the private lands of the corporation and the adjoining public lands in which plaintiff's homestead entry was located. In this situation plaintiff purchased from the owners of the Blythe Canal the right to connect with that canal, and he dug a ditch over the government land to do so. Thereafter he cultivated and improved the land, never intending to abandon the same.

[5] On May 5, 1908, the defendant served a notice of contest upon the plaintiff, in which it was charged that the plaintiff had never established a residence upon the land, had made no improvements thereon, and that he had abandoned the same for more than six months. The defendant, in support of this contest, made oath that he did not know and had no means of knowing the facts. This was insufficient to initiate a contest. Schofield v. Cole, 1 Land Dec. 140. And at the hearing of the contest it was proven, and conceded without dispute, that plaintiff had established a residence upon the land in controversy, had made improvements thereon, and that any lack of cultivation or absence from the land was due to its character and its dependence upon a system of irrigation to be provided by the govern-

ment under the Reclamation Act or some other system; that, instead of abandoning the land, plaintiff was residing on, reclaiming, cultivating, and improving it when he was served with the notice of contest.

[6] With respect to the defendant's charge that the plaintiff had abandoned the entry, we may not inquire into this question as a question of fact, although we may believe it was erroneously determined, but we may inquire into it as a question of law. Stark v. Starr, 6 Wall. 402, 419, 18 L. Ed. 925; Silver v. Ladd, 7 Wall. 219, 228, 19 L. Ed. 138; Cornelius v. Kessel, 128 U. S. 456, 461, 9 Sup. Ct. 122, 32 L. Ed. 482; Johnson v. Towsley, 13 Wall. 72, 84, 20 L. Ed. 485; Moore v. Robbins, 96 U. S. 530, 535, 24 L. Ed. 848; Smelting Co. v. Kemp, 104 U. S. 636, 641, 26 L. Ed. 875; Steel v. Smelting Co., 106 U. S. 447, 450, 1 Sup. Ct. 389, 27 L. Ed. 226.

[7] In this aspect we find that under section 5 of the act of June 27, 1906 (34 Stat. 519, 520, c. 3559 [Comp. St. 1916, § 4724]), a charge of abandonment of an entry cannot be successfully maintained against an entryman whose failure to make improvements and reclaim the land entered by him was during a time when he was hindered, delayed, or prevented from making such improvements and from reclaiming the land by reason of the withdrawal of the land from public entry for irrigation contemplated by the Reclamation Act.

In Gustave Gilbertson, 38 Land Dec. 474 (1910), the Assistant Secretary of the Interior, referring to a withdrawal of lands under the Reclamation Act, and the extension of time provided for under the act of June 27, 1906, said:

"Irrigation projects of such extent are necessarily co-operative. If such events happen by act of the government, that continuance of co-operation of the original projectors is prevented; the case comes within the act of June 27, 1906, as a case of active interference by the United States, preventing success of a private co-operative project."

In John H. Haynes, 40 Land Dec. 291 (1911), the Assistant Secretary of the Interior, upon a rehearing upheld an entry that had been recommended for cancellation by the local land office, affirmed by the Commissioner of the General Land Office, and affirmed by the Department of the Interior; but upon rehearing the Assistant Secretary, referring to the requirements of the Reclamation Act added to the Homestead Act, said:

"These added requirements cannot be performed by the entryman, or even definitely known, until the project is completed. More than seven years after the date of entry may elapse before a reclamation project is completed, water available, and charges known. Until water is available, cultivation is impossible. Any earlier attempt to cultivate would necessarily result in total loss of seed and labor. It would be irrational and unreasonable to subject the entryman to such loss in merely pretentious compliance with form of performance known to be useless and hopeless of fruitful return."

We assume that the act of June 27, 1906, was overlooked, or its meaning misunderstood, when the officers of the Land Department held that the plaintiff had abandoned his homestead entry while he was in fact residing upon the land and holding it, pending a final determination of the Secretary of the Interior as to whether or not the land would be required for irrigation works under the first form

of withdrawal. This was clearly a mistake of law, and authorizes a review of the proceedings in a court of equity. We might stop here, but for the fact that it is contended on behalf of the defendant that his contest resulted in his securing an absolute preference right to the land under the provisions of the act of May 14, 1880 (21 Stat. 140, c. 89 [Comp. St. 1916, § 4536]), and that this preference right was also extended until the land was restored to public entry. But it appears that in the final proceedings for a patent the defendant abandoned this claim of a preference right to enter the land, substituted a lieu land selection, and obtained his patent upon that claim. To understand this feature of the case it is necessary to follow the proceedings to the end.

[8, 9] The act of May 14, 1880, provides, among other things, as follows:

"Sec. 2. In all cases where any person has contested, paid the land office fees, and procured the cancellation of any pre-emption, homestead, or timber culture entry, he shall be notified by the register of the land office of the district in which such land is situated of such cancellation, and shall be allowed thirty days from date of such notice to enter said lands."

On June 6, 1905, the Commissioner of the General Land Office, upon the approval of the Secretary of the Interior, issued instructions to the registers and receivers of the land office concerning the withdrawal of lands under the Reclamation Act (33 Land Dec. 607). In these instructions it was said:

"Seventh. When any entry for lands embraced within a withdrawal under the first form is canceled by reason of contest, or for any other reason, such lands become subject immediately to such withdrawal, and cannot thereafter, so long as they remain so withdrawn, be entered or otherwise appropriated, either by a successful contestant or any other person; but any contestant who gains a preference right to enter any such lands may exercise that right * * * within thirty days from notice *that the lands involved have been released from such withdrawal and made subject to entry.*"

There are at least two objections to the application of these regulations to the defendant's contest. We do not find in the Reclamation Act any authority conferred upon the Secretary of the Interior to so extend the limitation of the act of May 14, 1880. It is true he was authorized by section 10 of the Reclamation Act "to make such rules and regulations as may be necessary and proper for the purpose of carrying the provisions of this act [Act June 17, 1902] into full force and effect." But he was not authorized to amend, modify, or change the act of May 14, 1880, under which the defendant claims his preferential right. But assuming, without so deciding, that this last-named act, construed in the light of the extension of time provided for in the act of June 27, 1906, authorized the Secretary of the Interior to give such instructions and to make such regulations, we are at once confronted with the second objection, based upon the fact that the regulations of June 6, 1905, relating to contested entries, were vacated before the defendant even attempted to make an entry under his supposed preferential right. The regulations of the Secretary of the Interior vacating the regulations of June 6, 1905, were issued January 19, 1909, and provided (37 Land Dec. 365):

"Sixth. No contest will be allowed against any entry embracing land included within the area of any first form withdrawal, and in all cases where a contest has been allowed prior to such withdrawal, the withdrawal, if made before the termination of the contest, or before entry by the successful contestant, will, ipso facto, terminate all right that was acquired by reason of such contest."

These regulations went into immediate effect. If we hold that the Secretary of the Interior had the authority to make the regulations of June 6, 1905, we must also hold that he had the authority to make the regulations of January 19, 1909. If he had the authority to make, he had the authority to unmake. If he could amend or modify the statute in one case, he could do so in the other.

When the regulations of January 19, 1909, were issued, no entry of the land had been made by the defendant. The withdrawal had been made before the termination of the contest and before entry by the defendant. The defendant had acquired no vested right to enter the land, but merely a preferred right of entry against every one except the United States, and this right, extended by regulation, might be terminated at any time. This was the decision of the Assistant Secretary of the Interior on February 17, 1909, in the case of David A. Cameron, 37 Land Dec. 450. We are of opinion that whatever preferential right the defendant had secured by his contest was terminated by the regulations of January 19, 1909.

If it should be conceded that defendant did obtain a preferential right to enter the land while the land was completely withdrawn from entry under the first form, it was a right which, based upon a regulation, might be terminated by the Secretary of the Interior before entry, and in our opinion was so terminated by the regulations of January 19, 1909. In Edwards v. United States, 223 Fed. 309, 138 C. C. A. 551, the appellant in that case (the plaintiff in this case) was indicted and convicted for resisting the entry of defendant upon the land in controversy on November 25, 1912. On appeal to this court an effort was made to raise the questions involved in the present case, but the record in that case did not present them for decision, and they were not decided. The court in affirming the judgment, said:

"The same questions may arise in future litigation between the different claimants, and, if they do, the parties should not be embarrassed by the decision of unnecessary questions at this time."

The defendant asserted his preference right to enter the land up to the final proceedings under which his right to a patent was to be determined by the officers of the Land Department, when he suddenly abandoned his entry and claim of a preferential right, and presented to the Land Department a scrip selection for the land, and secured the patent and title which is the subject-matter of this suit.

[10] With respect to the scrip location finally made upon the land by the defendant, we are unable to determine from the complaint precisely what proceedings were had in the Land Office under which the defendant was permitted to substitute a location of this character for the entry made under a claim of a preferred right. Presumably the scrip was issued under the law and regulations relating to sol-

diers' additional homestead rights. If it was so issued, it was subject to the regulations of the Land Department upon the subject, found in the regulations dated February 21, 1908 (36 Land Dec. 278), March 26, 1908 (36 Land Dec. 346), and June 16, 1908 (John M. Rankin, 36 Land Dec. 522). It was also subject to the equitable rule stated in Moore v. Northern Pacific Ry. Co., 43 Land Dec. 173, 175, where the Assistant Secretary of the Interior says:

"Our whole public land system is based upon the fundamental considera-tion that the settler is to be preferred over claimants who seek to assert scrip or other rights to the public domain. Lands settled upon and claimed under the homestead law do not fall within the designation of public lands open to sale or other disposition under general laws other than those relating to settlement. This department is not robbed of its jurisdiction and duty to give equitable consideration to asserted settlement claims by the tender of a scrip application for the land by one having no claim to equitable considera-tion."

The Assistant Secretary refers to a former decision of the Land Department to the same effect (Dakota v. Thomas, 35 Land Dec. 171), where the decision of the Supreme Court in Ard v. Brandon, 156 U. S. 537, 543, 15 Sup. Ct. 406, 39 L. Ed. 524, is cited as declaring that:

As repeatedly held by the courts, "the law deals tenderly with the one who in good faith goes upon the public lands, with a view of making a home thereon."

The court says further:

"If he [the homestead settler] does all that the statute prescribes as the condition of acquiring rights, the law protects him in those rights, and does not make their continued existence depend alone upon the question whether or no he takes an appeal from an adverse decision of the officers charged with the duty of acting upon his application."

[11] This last statement of the equitable consideration to be given to the claim of a homestead settler is applicable to this case. Plain-tiff alleges that he protested against the acceptance of defendant's lieu land selection, and his application for hearing upon his protest was denied by the officers of the Land Department for the reason that the plaintiff had not served the defendant with a copy of the appeal. We infer from the allegations of the complaint that the pro-test against the defendant's lieu land selection was because the de-fendant had not complied with the regulations of the department governing such a proceeding. If this was the protest, and its denial was for the reason stated, we are of the opinion that the department was in error in not granting the hearing. He did not have a hearing upon his protest, although it was before the department for consid-eration. "The decision of the department is final, but that is on the presupposition that the decision was after a hearing in good faith, however summary in form." Chin Yow v. United States, 208 U. S. 8, 28 Sup. Ct. 201, 52 L. Ed. 369.

The motion to dismiss was made on the ground that the complaint does not state facts sufficient to constitute a cause of action. We think the complaint is not so defective as to justify its dismissal. It

does state facts sufficient to constitute a cause of action, but the facts are imperfectly stated, and with respect to the proceedings in regard to the defendant's lieu land selection are not fully stated.

The judgment is reversed, with direction to deny the motion to dismiss, and with leave to plaintiff to amend his complaint, if so advised.