[L. A. No. 4736. Department One.—December 1, 1919.]

## JOHN McLAREN, Appellant, v. L. G. FLEISCHER, Respondent.

[1] Public Lands—Decisions of Land Department—Review by Courts.—Courts cannot exercise direct jurisdiction over the rulings of the officers of the land department of the United States, nor are the courts authorized to reverse or correct such rulings in collateral proceedings between private parties, and the decisions of the department are subject to review by the courts only where it appears that the department has committed an error of law and denied to the parties the rights to which they are entitled under the constitution and laws of the United States.

[2] Id.—Homestead Entryman—Quieting Title—Maintenance of Action.—One who has made the affidavit required by section 2290 of the Revised Statutes of the United States relating to homestead entry upon public land, and who has paid the amount required to enter the quantity of land applied for, stands in the relation of an entryman, and can maintain an action to quiet title and compel conveyance of such lands to him.

[3] Id.—Act of Congress—Construction by Land Department—Weight With Courts.—The construction placed upon an act of Congress by the land department, with respect to the disposition of public lands, and its practical application thereof, is always given great weight by the courts in construing the law and is followed if it is at all reasonable.

[4] Id.—Contest of Homestead Entry—Preferential Right of Entry by Contestant—Running of Time—Construction of Act of Congress.—Under section 2 of the act of Congress of May 14, 1880, giving a person who has successfully contested and procured the cancellation of a homestead entry the preferred right to enter .

such lands within thirty days from the date of notice of such can-cellation, the time within which the contestant may exercise such right does not begin to run where the lands are suspended from entry pending a contest between the state and the United States as to their character and disposition, until the time of restoration of such lands to entry.

APPEAL from a judgment of the Superior Court of Riverside County. F. E. Densmore, Judge. Affirmed.

The facts are stated in the opinion of the court.

Henry M. Willis and J. O. Phillips for Appellant.

Duke Stone for Respondent.

Leonard, Surr & Hellyer and Frank C. Prescott, *Amici Curiae*.

LAWLOR, J.—This appeal was taken from a judgment of the superior court of Riverside County dismissing plaintiff's complaint after a general demurrer was sustained and the plaintiff refused to amend.

The action was brought by the plaintiff against the defendant to procure a decree in equity declaring that the defendant holds the title to a certain quarter-section of land in trust for the plaintiff, requiring the defendant to convey title to the plaintiff, and for the value of the use of the land for the period set forth in the complaint. The prayer of the complaint is based on allegations to the effect that the plaintiff was wrongfully, through mistake of law, deprived of such title, or the acquiring of such title, and the defendant was wrongfully, and by mistake of law, granted such title by the land department of the United States. There is no claim of fraud, either actual or constructive.

[1] Before proceeding to a consideration of the points involved in this appeal it is proper to point out that the rule is well settled that the courts cannot exercise direct jurisdiction over the rulings of the officers of the land department of the United States, nor are the courts authorized to reverse or correct such rulings in collateral proceedings between private parties, but that the decisions of the land

department are subject to review by the courts only where it appears that the land department has committed an error of law and denied to the parties the rights to which they are entitled under the constitution and the laws of the United States. Under such circumstances, the courts can in a proper proceeding interfere and refuse to give effect to the action of the land department. In *Quimby* v. *Conlan*, 104 U. S. 420, [26 L. Ed. 800, see, also, Rose's U. S. Notes], it was said: "It would lead to endless litigation, and be fruitful of evil if a supervisory power were vested in the courts over the actions of the numerous officers of the land department, on mere questions of fact presented for their determination. It is only when those officers have misconstrued the law applicable to the case, as established before the department, and thus have denied to parties rights, which upon a correct construction would have been conceded to them, or when misrepresentations and fraud have been practiced, necessarily affecting their judgment, that the courts can, in a proper proceeding, interfere and refuse to give effect to their action. On this subject we have repeatedly and with emphasis expressed our opinion, and the matter should be deemed settled." (Citing cases.)    In *Gage* v. *Gunther*, 136 Cal. 338, [89 Am. St. Rep. 141, 68 Pac. 710], this court declared: "If, however, in making such determination of fact, that tribunal [the land department of the United States] has disregarded the law applicable thereto, or has erred in its construction of the law or by reason of mistake has issued to one person a patent for the land, which upon undisputed facts should have been issued to another who has contested his claim and has shown himself entitled to the patent, the person in whose favor the patent was issued will be held to hold the land for the benefit of the one to whom it should have issued. Proceedings for this purpose are, however, to be taken in a court of equity, and are to be governed by the rules of equity procedure."

The following facts are taken from the complaint and must stand as true: On February 9, 1903, the southeast quarter of section 12, T. 7 S., R. 22 E., S. B. M., in the Palo Verde Valley, Riverside County, was open to public entry under the land laws of the United States, and on that day one Charles W. Rider made his homestead entry on

said land by filing his application in the land office at Los Angeles. This quarter-section, along with other lands, was withdrawn from all forms of entry on September 8, 1903, by order of the land department, under and by virtue of the act of Congress, approved June 17, 1902, and known as the Reclamation Act (32 Stat. 388, c. 1093, [U. S. Comp. Stats., secs. 4700–4708, 9 Fed. Stats. Ann., p. 1365]), such withdrawal being what is commonly known as "first form withdrawals," during the existence of which no lands embraced therein can be entered, selected, or located in any manner.

On February 18, 1908, while these lands were still withdrawn from public entry, L. G. Fleischer, defendant and respondent herein, filed a contest of the Rider entry before the register and receiver of the local land office at Los Angeles, who sustained the contest and recommended to the commissioner of the general land office that the Rider entry be canceled. The commissioner approved the recommendation and on January 26, 1909, canceled the entry, and directed the register and receiver to advise all parties in interest. The defendant was notified by the register and receiver of the cancellation of the entry on February 11, 1909, and at the same time was notified by the register and receiver that he had been awarded a preference right to enter upon the said quarter-section *within thirty days after the said land had been restored to public entry.* An order of the Secretary of the Interior, dated January 10, 1910, restored the quarter-section, along with other lands, to public settlement on April 18, 1910, and to public entry on May 18, 1910.

On the day that the land was restored to public settlement, April 18, 1910, the plaintiff, "being in all ways qualified under the laws to do so," made actual settlement on the quarter-section hereinbefore mentioned, with the intention of claiming the land under the homestead laws of the United States. And on May 18, 1910, he filed his homestead application, as such settler, in the local land office at Los Angeles, paid the fees required by law, continued thereafter to reside upon and improve the land, and "in fact complied with all the laws and requirements of the laws of the United States, and all the rules and regulations of the land department of the United States, relating to

homesteads, except as prevented or prohibited by the officers of said land department, until he was ejected from said premises by judgment of the superior court of the state of California in and for the county of Riverside, entered April 24, 1915.''

The defendant, on May 18, 1910, made his application for entry on the same quarter-section, but subsequent to the application of the plaintiff, claiming a preference right to make such entry, under and by virtue of the preference right awarded him by the provisions of the act of May 14, 1880, hereinafter set forth.  On the same day all the entries on this quarter-section and certain other land were suspended, pending the settlement of a contest between the state of California and the United States as to the character and disposition of these lands.  On May 22, 1912, the lands were again restored to public entry, subject to the applications already made.  Some time later, namely, on June 3, 1912, the register and receiver of the local land office at Los Angeles rejected the application of the plaintiff and allowed that of the defendant, ''on the sole ground that the said defendant had acquired a preference right . . . by reason of the successful termination'' of his contest of the Rider entry.  Plaintiff appealed, but the commissioner of the land office affirmed the decision of the register and receiver.  In pursuance of this decision a patent for the said quarter-section was issued to the defendant on January 15, 1915.

From the date of his settlement on the land, April 18, 1910, until he was ejected under the judgment of the superior court above mentioned, the plaintiff lived on the land with his family, and the complaint alleges that he has been always qualified, under the laws of the United States, to make the proposed homestead entry and has complied with all the requirements of said laws and all the rules and regulations of the land department of the United States relating to homesteads, except as prevented or prohibited by the officers of the land department.

The point is raised in the brief of *amici curiae* that the ''plaintiff has not connected himself with the government or shown that he is vested with the equitable title so as to enable him to maintain this action.''  There is clearly no merit in this contention.  Section 2290 of the Revised

Statutes of the United States [U. S. Comp. Stats., sec. 4531, 2 Fed. Stats. Ann., p. 1127] provides:

"That any person applying to enter land . . . shall first make and subscribe before the proper officer and file in the proper land office an affidavit that he or she is the head of a family, or is over twenty-one years of age, and that such application is honestly and in good faith made for the purpose of actual settlement and cultivation, and not for the benefit of any other person, . . . except himself, or herself, and upon filing such affidavit with the register or receiver on payment of five dollars when the entry is of not more than eighty acres, and on payment of ten dollars when the entry is for more than eighty acres, he or she shall thereupon be permitted to enter the amount of land specified." What constitutes an entry was laid down in *Hastings etc. Co.* v. *Whitney*, 132 U. S. 357, [33 L. Ed. 363, 10 Sup. Ct. Rep. 112, see, also, Rose's U. S. Notes], Mr. Justice Lamar writing the opinion:

"Under the homestead law three things are needed to be done in order to constitute an entry on public lands: First, the applicant must make an affidavit setting forth the facts which entitle him to make such an entry; second, he must make a formal application; and, third, he must make payment of the money required. When these three requisites are complied with, and the certificate of entry is executed and delivered to him, the entry is made—the land is entered." (See, also, *Whittaker* v. *Pendola*, 78 Cal. 296, [20 Pac. 680]; *Northern Pac. R. Co.* v. *Nelson*, 22 Wash. 521, [61 Pac. 703].)

The case of *Chapman* v. *Quinn*, 56 Cal. 266, is relied on to support the contention that the plaintiff has not connected himself with the government title sufficiently to entitle him to maintain the present action to declare the defendant trustee of the title for his benefit. This decision, however, is not in point. In that case the court was considering the pre-emption statute, which provided that before an entry could be made under that section it must be established to the satisfaction of the register and receiver that the applicant had settled upon and improved the land he sought to enter (page 274). Section 2290, it will be observed, does not require the applicant to do anything more than the plaintiff herein had done in order to enter

the land; that is to say, to make, subscribe, and file in the proper land office the affidavit required by that section, and to pay the amount of money necessary to enter the quantity of land he applies for. When this is done his right is complete. The statement in the opinion of Mr. Justice Lamar which seems to imply that the entry is not complete until the officials execute a certificate of entry to him is not warranted by the statute. The applicant has put himself in privity with' the government when he has done all he could do in the matter. He is then in a position to compel the officials to do their duty toward him and to assert his right against others claiming a similar right from the government. [2] The plaintiff in this case had complied in all respects with the law and stood in the relation of an entryman upon a homestead claim. In *Chapman* v. *Quinn,* under a lawful rule of the land department, Quinn had not been allowed to file any application or make any proof. The two cases are clearly distinct and different.

The only question presented and decided in the land department was whether the plaintiff or the defendant had the better or prior right to enter the land. This question was decided in favor of the defendant on the single ground that he had been granted a preference right. The sole question, therefore, which is presented for decision here is whether the officers of the land department made a mistake of law in granting the defendant a preference right, in the recognition of which it became necessary to cancel plaintiff's entry.

A preference right is authorized by the act of Congress of May 14, 1880 (21 Stat. 140, c. 89, [U. S. Comp. Stats., secs. 4536–4538, 8 Fed. Stats. Ann., p. 598]), which reads in part as follows:

"Sec. 2. In all cases where any person has contested, paid the land office fees, and procured the cancellation of any pre-emption, homestead, or timber culture entry, he shall be notified by the register and receiver of the land office of the district in which such land is situated of such cancellation and *shall be allowed thirty days from date of such notice to enter said lands.*" (Italics ours.)

At the time this act of 1880 was passed the Reclamation Act had not been enacted. It is obvious that the act of 1880 is based on the assumption that when the entry of

one claimant was canceled the successful party could immediately enter the land. It contemplates land which would remain subject to entry during the contest. The provision that the successful claimant should be allowed thirty days within which to enter the land after he was notified by the land office of the cancellation of his adversary's entry, was intended and supposed to give him thirty days, during the whole of which time he could complete his own entry. It cannot be conceived that the Congress intended to start the time of his preference running before it was possible for him to exercise his right thereto. The law gives the preferred right absolutely, and the provisions regarding the giving of notice of necessity imply that the land shall be subject to entry at the time the notice is received and that it must be subject to entry before the notice can become effective to start the time running. The notice which the act contemplates shall be given must be understood to be a notice which would give effect to the right intended to be preserved, and not a notice that would defeat it. In this case the land was not subject to entry at the time the contest was terminated and Rider's entry canceled. The register and receiver apparently so interpreted the effect of the act of 1880 when they sent the notice, for it informed the defendant that his preference right to enter the land would continue for thirty days after the land was restored to entry. The notice they gave must be construed as a notice to take effect on the restoration to entry of lands involved and not before. If this construction is not given, the object of the act of 1880 would be utterly defeated in all cases such as the one at bar. The land department itself has so understood and construed the act. Section 10 of the Reclamation Act gives to the Secretary of the Interior authority to make such rules and regulations as may be necessary and proper to carry its provisions into effect. These provisions include his order restoring the land to entry after its withdrawal. As evidence of the departmental construction of the act of 1880, certain regulations were promulgated on June 6, 1905, of which number 7 provides that "any contestant who gains a preferred right to enter any such lands may exercise that right at any time within thirty days from notice that the lands involved have been *released* from such withdrawal and made subject

to entry." (Italics ours.) The land department with regard to lands so withdrawn, has consistently held to the proposition that the preference right to enter given to the successful contestant by the act of 1880 does not begin to run until the land is again restored to entry, regardless of the time when he receives the official notice of cancellation of his adversary's entry. [3] The construction placed upon an act of Congress by the land department, with respect to the disposition of public lands, and its practical application thereof, is always given great weight by the courts in construing the law and is followed if it is at all reasonable. [4] We are satisfied that the land department correctly construed the act in the present case in its decision that the time within which the defendant could exercise his preference right, after the cancellation of the other entry, did not begin to run against him until the date of the restoration of the land to public entry. This occurred on May 18, 1910. This was in effect decided by the land department in the case of *Fairchild* v. *Eby*, 37 Land Dec. 362. Referring to the department regulations aforesaid and to the preference right allowed by the act of 1880, the Secretary of the Interior there said: "It was thus contemplated that the preference right allowed by the sixth section [of the regulations] should remain suspended if the land was not subject to entry at the date of cancellation, but that the preference right so acquired might be exercised whenever the land was restored." The sixth section refers to the preference right accruing under the act of 1880 aforesaid. To the same effect see *Wright* v. *Francis*, 36 Land Dec. 499; *Beach* v. *Hanson*, 40 Land Dec. 607; *Wells* v. *Bodkin*, 42 Land Dec. 340; *Edwards* v. *Bodkin*, 42 Land Dec. 172.

Appellant relies upon *Edwards* v. *Bodkin*, 249 Fed. 562, [161 C. C. A. 488], in support of his claim that the preference right was awarded to the respondent through a mistake of law. The decision there was not to the effect that the contestant was by mistake of law given the preference right. It was there held that the commissioner of the general land office had mistaken the law in declaring that the settler had abandoned his homestead claim. In discussing the question the court remarked that the Reclamation Act did not confer authority "upon the Secretary of the Interior to so extend the limitation of the act of May 14, 1880." This is the statement

relied upon. It is unnecessary to determine in this case whether the Reclamation Act gave or could give legislative authority to the Secretary of the Interior. It is enough for the purpose of this case to say that he may construe the act of 1880 in connection with the Reclamation Act, and if the construction he adopts is reasonable it will be upheld and followed by the courts.

For these reasons we are of the opinion that the preferred right of the defendant to complete his entry and thereupon occupy the land for the purpose of acquiring a homestead patent did not begin to run until the date of the restoration of the land to entry, when for the first time it became possible for him to exercise the right given by the statute. The demurrer was properly sustained.

The judgment is affirmed.

Shaw, J., and Olney, J., concurred.

Hearing in Bank denied.

All the Justices concurred.