[Civ. No. 3610.  Second Appellate District, Division One.—June 17, 1921.]

## THEODORE BOWEN, Appellant, v. SETH HICKEY, Respondent.

[1] Public Lands—Right to Patent—Duties of Entryman—Residence—Reclamation Work.—Under the provisions of the homestead law an entryman, in order to become entitled to a patent, is required to make compliance with the conditions as they are expressed in sections 2289–2291 of the Revised Statutes, one of which is that he shall establish a residence upon the land and that he shall not abandon the land "for more than six months at any time" during the five-year period, and in addition thereto he must reclaim at least one-half of the total irrigable area of his entry for agricultural purposes.

[2] Id. — Establishment of Residence — Determination by Land Officials—Review of Evidence by Courts.—In reviewing the question as to the nonestablishment of a residence upon public land and as to the abandonment of the same by an entryman, which were considered and determined by officials of the Land Department and by the Secretary of the Interior, the court has no power to revise such decisions where there is found any evidence upon which the determinations therein reached can be sustained.

[3] Id.—Conflicting Claims—Finding and Decision of Secretary of the Interior—When Conclusive—Equity.—The finding of the Secretary of the Interior on appeal in any controversy over conflicting claims to the public land is conclusive as to all questions of fact in the absence of fraud or gross mistake, and is otherwise conclusive unless there has been a clear misapplication of the law; and in such exceptional cases only may the courts inquire into the matter and, in equity, where patent has issued, adjudge the title to be in the person having the right thereto.

[4] Id.—Residence—What Required.—Residence cannot be acquired or maintained by occasional visits, or by going upon the land for the purpose of merely formal compliance with the law. Substantial residence and good faith are required.

[5] Id.—Act and Intent of Entryman—Evidence—Adverse Decision by Land Officials.—The question of residence is a question of fact, in the establishment of which the acts done by the claimant, and his intention in connection therewith, are all to be considered; and in this action in equity to secure a decree determining that the defendant, a patentee invested with legal title to certain lands described in the complaint, held such lands and the title thereto in trust for plaintiff, the facts were such that

the decisions of the land officials made adversely to plaintiff were wholly justified.

[6] ID.—CONTEST—TIME.—Under the provisions of section 2297 of the Revised Statutes, a contest must be initiated within five years from the date of the homestead entry, but it is not necessary that such contest be disposed of or decided within that period.

[7] ID.—CONSTRUCTION OF STATUTES BY LAND DEPARTMENT—EFFECT OF.—The construction ·placed upon an act of Congress by the Land Department, with respect to the disposition of public lands, and its practical application thereof, is always given great weight by the courts in construing the law and is followed if it is at all reasonable.

[8] ID. — REGULATIONS OF INTERIOR DEPARTMENT — SCOPE OF.—The power of the Interior Department, or commissioner of the land office, is to enforce and not change the effect of statutes, to which end only they may adopt regulations.

[9] ID.—EXCUSE FROM MAINTENANCE OF RESIDENCE—CONSTRUCTION OF RECLAMATION ACT.—The act of Congress of April 30, 1912, which was designed to excuse entrymen under the Reclamation Act from the duty to maintain residence or make improvements prior to the time water might become available for irrigation, applies only to persons who have theretofore established residence in good faith upon the lands entered.

APPEAL from a judgment of the Superior Court of Riverside County. Hugh H. Craig, Judge. Affirmed.

The facts are stated in the opinion of the court.

Henry M. Willis, Frank C. Prescott and Prescott & Prescott for Appellant.

F. E. Dunlap and H. F. Bridges for Respondent.

JAMES, J.—Appeal from a judgment entered in favor of the defendant.

Plaintiff brought this action in equity to secure a decree determining that the respondent, a patentee invested with legal title to certain lands described in the complaint, held such lands and the title thereto in trust for appellant. The cause of action had for its basis the asserted claim that appellant, having first become vested with the right to have patent issued to him covering the lands in controversy, was wrongfully prevented from the enjoyment of that right through erroneous decisions made by officials of the

federal Land Department and the confirmatory decision of the Secretary of the Interior. On April 15, 1903, appellant filed with the district land office his application and affidavit setting forth facts required to be shown in order to perfect a homestead entry. The application was made subject to the provisions of an act of Congress of June 17, 1902 (32 Stat. 388; Comp. Stats. Supp. 1907, p. 511; [9 Fed. Stats. Ann., pp. 1363–1369; U. S. Comp. Stats., secs. 4700–4708]), relating to reclamation of arid and semi-arid lands. On March 20, 1908, respondent herein filed with the register of the land office within the district an affidavit of contest conforming to the provisions of section 2297 of the Revised Statutes [8 Fed. Stats. Ann., 2d ed., p. 581; U. S. Comp. Stats., sec. 4552], in which affidavit he charged that appellant had failed to establish a residence upon the land, and had abandoned the land for more than six months. Notice was given and due hearing had in the matter of the contest, and on April 15, 1910, the register and receiver rendered their decision holding that the contest should be sustained and the entry of appellant canceled. An appeal was taken by appellant, first to the commissioner of the land office and next to the Secretary of the Interior, and the decision of each of these officers was adverse to appellant. In the decision rendered by the Assistant Secretary of the Interior it was stated: "The General Land Office found that the claimant failed to establish and maintain residence on the land or to make any cultivation of the same, as required by law. That finding is fully sustained by the testimony and an examination of the records discloses no error in the decision of the General Land Office, and no tenable ground appears upon which a contrary decision could be sustained. The decision appealed from is therefore affirmed." [1] Under the provisions of the homestead law an entryman, in order to become entitled to patent, is required to make compliance with the conditions as they are expressed in sections 2289–2291 of the Revised Statutes [Fed. Stats. Ann., 2d ed., pp. 543–557; U. S. Comp. Stats., secs. 4530–4532], and in addition thereto reclaim at least one-half of the total irrigable area of his entry for agricultural purposes. One of the requirements of the homestead statutes is that the claimant shall establish a residence upon the land and that

he shall not abandon the land "for more than six months
at any time" during the five-year period; otherwise the
land shall revert to the government (sec. 2297, Rev. Stats.,
prior to amendment of 1912). **[2]** In reviewing the ques-
tion as to the nonestablishment of a residence upon the land
and as to the abandonment of the same by appellant, which
were considered and determined by officials of the Land
Department and by the Secretary of the Interior, the court
has no power to revise such decisions where there is found
any evidence upon which the determinations therein reached
can be sustained. **[3]** The finding of the Secretary of the
Interior on appeal in any controversy over conflicting claims
to the public land is conclusive as to all questions of
fact in the absence of fraud or gross mistake, and is other-
wise conclusive unless there has been a clear misapplication
of the law. In such exceptional cases only may the courts
inquire into the matter and, in equity, where patent has
issued, adjudge the title to be in the person having the
right thereto. (*Le Marchal* v. *Tegarden,* 175 Fed. 682,
[99 C. C. A. 236]; *Catholic Bishop* v. *Gibbon,* 158 U. S.
155, [39 L. Ed. 931, 15 Sup. Ct. Rep. 779, see, also, Rose's
U. S. Notes]; *Edwards* v. *Bodkin,* 249 Fed. 562, [161
C. C. A. 488]; *Gage* v. *Gunther,* 136 Cal. 338, [89 Am.
St. Rep. 141, 68 Pac. 710]; *McLaren* v. *Fleischer,* 181 Cal.
607, [185 Pac. 967].) Considering the case irrespective of
certain withdrawal orders which were made under terms
of the Reclamation Act, and which give foundation for
questions argued herein as to a suspension of the homestead
requirements and also as to the suspension of the right to
contest an entry: The evidence showed that appellant went
on the land on October 15, 1903, and stayed but one night;
that in 1904 he did not go on the land at all; that in
1905 he started to take some material to erect a building
on the property but high water made it difficult for him
to get his team there and that he merely crossed the land
but did not stop. His next visit was in February, 1906,
when he spent about three months on the land putting up
a shack, twelve by sixteen feet in dimensions, made of half-
inch board, having two doors but no floors nor windows.
At that time he dug a shallow well, but did no clearing or
cultivating. His next visit was for two days in the latter
part of November, 1907, and then one night in December,

1907. He was not on the land again until after he had received verbal notice that the contest of respondent had been initiated, whereupon he declared to the contestant that he intended to hold the land and thereupon went upon it. As was said by the commissioner in his decision: "Until he [appellant] learned of pending contest proceedings, he did nothing toward establishing genuine residence on the land, but merely attempted to keep up a form of compliance with the letter of the law. While he took great trouble to go to the land, he lost no time in taking equal trouble to go away from it, and his occasional visits were evidently made with no thought of remaining," and the commissioner very pertinently added: [4] "It is well settled that residence cannot be acquired or maintained by occasional visits, or by going upon the land for the purpose of merely formal compliance with the law. Substantial residence and good faith are required." Appellant himself testified that he was a prospector and had lived at various places, received his mail sometimes in Yuma or Phoenix, Arizona, sometimes in Tucson, and sometimes at Neighbors, the latter being the postoffice most convenient to the land claimed by him. [5] As the question of residence is a question of fact, in the establishment of which the acts done by claimant, and his intention in connection therewith, are all to be considered, it appears that the decisions of the land officials made adversely to the claim of appellant here were wholly justified by the evidence. This case in its facts is not dissimilar to that of *United States* v. *Mills et al.,* 190 Fed. 513, [42 L. R. A. (N. S.) 752, 111 C. C. A. 345], where the decree annulled a patent for fraud. The holding there was that a residence in good faith was not established under the evidence. The court, referring to the acts of the patentee, said: "His only acts tending to show an actual personal residence *were* that he did, about every four or six months, take some bedclothes with him and go to the homestead and spend the night, sleeping either on the porch or in the house, and the next day would take his bedclothes and go home. . . . The evidence clearly shows that Mills never intended to live on the place during the five years succeeding his entry and that he did not live on it, . . . that he stayed there one night in every four, five, or six months so as to 'fulfill the law,' as he expressed it.

. . . If this constitutes residence he could have obtained in like manner a residence on a dozen other quarter sections at the same time. . . . It was never intended that a patent should be granted where the entryman never lived on the land—when he could have lived on it if he had wished to do so, and when during the entire five years succeeding the filing of his claim he had a home and residence elsewhere." Additional cases may be cited: *Stewart* v. *McHarry,* 159 U. S. 643, [40 L. Ed. 290, 16 Sup. Ct. Rep. 117, see, also, Rose's U. S. Notes] ; *Carr* v. *Fife et al.,* 156 U. S. 495, [39 L. Ed. 508, 15 Sup. Ct. Rep. 427] ; *Small* v. *Rakestraw,* 196 U. S. 403, [49 L. Ed. 527, 25 Sup. Ct. Rep. 285] ; the last holding that a voting residence in another county was inconsistent with actual residence on homestead land.

[6] The point is urged by appellant that the contest allowed under the provisions of section 2297 of the Revised Statutes must be initiated and decided within five years from the date of the homestead entry. The contest was initiated before the expiration of five years from the date of plaintiff's entry by the filing of the necessary affidavit. The formal notice of the contest was served on June 5, 1908, and hearing had before the local land officials at a subsequent date, decision being rendered on April 15, 1910. The provisions of section 2297 do not contemplate that a contest must be both commenced and disposed of all within the five-year term. As respondent well argues, if such was the law, then an abandonment of residence, where the six-months period expired on the last day of the five-year term, would be beyond the reach of a contest, although the statute plainly makes such abandonment ground for cancellation of the entry. Respondent suggests that this point was not raised before the land office officials; therefore, cannot be taken advantage of here for the first time. There seems to be merit in that position (*Carr* v. *Fife et al., supra*), although we have already indicated an adverse view on the proposition, assuming that it was entitled to be considered. The default of appellant in the matter of residence had not been cured prior to the initiation of the contest, as was the situation considered in some of the cases cited.

There were two withdrawal orders made under authority of the Reclamation Act. Section 3 of that act authorizes

orders to be made withdrawing land from entry, the terms of the statute being as follows: "That the Secretary of the Interior shall, before giving the public notice provided for in section four of this Act, withdraw from public entry the lands required for any irrigation works contemplated under the provisions of this Act, and shall restore to public entry any of the lands so withdrawn when, in his judgment, such lands are not required for the purposes of this Act; and the Secretary of the Interior is hereby authorized, at or immediately prior to the time of beginning the surveys for any contemplated irrigation works, to withdraw from entry, except under the homestead laws, any public lands believed to be susceptible of irrigation from said works: Provided, That all lands entered and entries made under the homestead laws within areas so withdrawn during such withdrawal shall be subject to all the provisions, limitations, charges, terms, and conditions of this Act" (Comp. Stats. 1901, Supp., p. 513). These withdrawal orders are commonly referred to for convenience as being "first form" or "second form," according to sequence as the authority appears to be given in the statute. The first form withdrawal was ordered on September 12, 1903. It is not contended that the second form order was effective to relieve appellant from the duty to comply with the homestead law as to residence or cultivation, but it is his claim that after the first form withdrawal order was made all requirements as to residence, cultivation, or irrigation were suspended until the land was restored to entry. Section 5 of the Reclamation Act provides that the entryman, "in addition to compliance with the homestead law," shall reclaim at least one-half of the total irrigable area, etc., from which provision it is made clear that in any event full compliance with the homestead law is exacted. Whether the claimant may be excused from subjecting the land to irrigation does not seem to be necessarily involved in the case, in view of the findings of the Land Department officials. [7] It has been held by our supreme court that "the construction placed upon an act of Congress by the Land Department, with respect to the disposition of public lands, and its practical application thereof, is always given great weight by the courts in construing the law and is followed. if it is at all reasonable." (*McLaren* v. *Fleischer, supra.*) It is

not indicated in the provisions of the Reclamation Act that an entryman, pending a withdrawal which is not permanent in form but is for preliminary purposes, may disregard the requirement of residence and be protected in his entry after the withdrawal order has been abrogated. Under date of June 17, 1902, the Secretary of the Interior issued a circular of information respecting the withdrawals of land made under the Reclamation Act, in which it was stated that the principal purpose of such withdrawals was to enable surveys and investigations to be made to determine the feasibility of the particular irrigation project. The circular contained this language: "Even if the project is feasible, only a portion of the lands withdrawn will be irrigated. The mere fact that surveys are in progress is no indication whatever that the works will be built." On May 17, 1904, the secretary, evidently for the purpose of advising entrymen of the construction which the Land Department was giving to the reclamation statute, directed that a circular letter be prepared instructing the local land officers to "notify all persons who apply to make entry of lands within the irrigable area of any project commenced or contemplated under the Reclamation Act, that they will be required to comply fully with the homestead law as to residence, cultivation, and improvement of the land, and that the failure to supply water from such works in time for use upon the land entered will not justify a failure to comply with the law and to make proof thereof within the time required by the statute." The latter instruction, of course, did not expressly cover cases where withdrawal orders under the first form might be made, but it indicates the view of the department that residence and other requirements of the statute were not to be relaxed though the project of obtaining water failed of success. The land officials gave public announcement that the withdrawals of lands as made under the orders here considered were not permanent, that no promise was held out that water would be obtained, but that they were for the purpose of enabling preliminary investigations to be made which would determine whether the projects proposed to be carried out were feasible. When the time arrived that it was found that such projects were feasible, a permanent order would have no doubt followed. Certain regulations

53 Cal. App.—17

of the land commissioner, referred to as those of June 6, 1905, as amended January 19, 1909, the amendment prohibiting contests of land included within a first form withdrawal, are urged as applicable in curing any claimed default of appellant. These regulations were considered by the assistant commissioner of the land office in the concluding portion of his opinion, wherein he said: "In his brief, counsel for the defendant contends that the contest should have been dismissed by reason of the provisions of the regulations approved June 6, 1905, as amended January 19, 1909 (37 L. D. 365), relating to contests affecting lands included within withdrawals under the Reclamation Act. The amendment was not in force when the contest was initiated, and said contest was properly allowed under the regulations then controlling." [8] If the reclamation statute did not provide for a suspension of the right of contest authorized under section 2297 of the Revised Statutes, then the amended regulations of January 19, 1909, were void and of no effect, for it has been held that the power of the Interior Department, or commissioner of the land office, is to enforce and not change the effect of statutes, to which end only they may adopt regulations. (*Leonard* v. *Lennox,* 181 Fed. 760, [104 C. C. A. 296].) The case of *Edwards* v. *Bodkin,* 249 Fed. 562, [161 C. C. A. 488], is not in point because under the facts there considered it appeared that the entryman had resided upon the land continuously and had not abandoned his residence, and the court particularly noticed that fact. [9] Assuming that the act of Congress of April 30, 1912, which was designed to excuse entrymen under the Reclamation Act from the duty to maintain residence or make improvements prior to the time water might become available for irrigation, may be said to apply to a case like that of appellant's, where the forfeiture period had expired and contest initiated before the passage of the act (and we do not agree that it does), there is one particular condition of that act which makes it inapplicable, namely, that it applies only to persons who have theretofore "established residence in good faith upon the lands entered." Under the facts as they were determined to be in this case, there was not good faith shown in the establishment of the residence of appellant on the lands in question.

We are of the opinion that there was no irregularity in accepting and allowing the homestead application of respondent. However, that question is not important to be decided after it has been determined that the entry of appellant was properly canceled because of his abandonment of residence on the property. He must recover here, if at all, on the strength of his own title and not upon the weakness of his adversary's. Such is the rule repeatedly announced in controversies of this kind. (*Small* v. *Rakestraw,* 28 Mont. 413, [104 Am. St. Rep. 691, 72 Pac. 746], 196 U. S. 401, [49 L. Ed. 527, 25 Sup. Ct. Rep. 285]; *Sparks* v. *Pierce,* 115 U. S. 408, [29 L. Ed. 428, 6 Sup. Ct. Rep. 102, see, also, Rose's U. S. Notes].)

We find no error requiring that the decree be set aside. The judgment is affirmed.

Conrey, P. J., and Shaw, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on August 15, 1921.

All the Justices concurred, except Angellotti, C. J., and Wilbur, J., who were absent.