BURKE, P. J.
 

 Plaintiff Harry Robert Smith, a real estate broker, and defendant Milton F. Batt were employed by the same real estate firm in March of 1960, which firm had a listing from Mr. and Mrs. Morris, the owners of a motel and adjoining vacant lot. Smith entered into negotiations with Morris to purchase the property himself. Batt importuned Smith to permit him to come into the deal, agreeing that if Smith would advance Batt’s share of the purchase price Batt would give Smith a promissory note to cover the advance and would secure it by a trust deed on his interest in the property. Smith agreed and an escrow was opened on March 17, 1960, wherein Smith and Batt agreed to purchase the motel and vacant lot from Morris for $350,000, $20,000 to be paid in cash and $30,000 in the form of promissory notes secured by second trust deeds executed by Smith on real property owne.d by Smith in Santa Ana. The motel property was purchased subject to existing trust deeds of record with the balance of the purchase price to be represented in a purchase money trust deed on the motel in the approximate amount of $56’000.
 

 
 *182
 
 Batt’s brother-in-law, plaintiff Simon Z. Aman, agreed with Batt and Smith to pay $20,000 in cash, which he deposited in the escrow, for which he was to receive a one-third interest in the motel and vacant lot. The escrow closed on April 1, 1960, with title to the motel and vacant lot being taken in the names of the defendants Batt (hereinafter referred to as “Batt”) as to one undivided one-half interest, and plaintiffs Smith (hereinafter referred to as “Smith”) as to an undivided one-half interest. After the close of the escrow Smith demanded repeatedly that Batt execute and deliver the note and trust deed representing Batt’s share of the down payment. Both Aman and Smith also demanded that Batt join Smith in executing a deed to Aman as to the one-third interest in the property which it had been agreed would be delivered to Aman. Eventually Batt caused a deed to be drawn to Aman for a one-third interest in the motel which was signed by Smith and Batt and delivered to the escrow for recordation. However, Batt then informed the escrow holder not to record the deed but to hold it.
 

 When Batt failed to keep his promises Smith advised him to get an attorney. Thereupon Batt retained defendant D. Brandon Bernstein (hereinafter referred to as “Bernstein”) to represent him. Batt deeded Bernstein a 25 per cent interest in his one-half interest in the property without the knowledge of the plaintiffs. Bernstein ultimately called Smith stating that he was satisfied that Batt owed Smith nothing but that Batt would agree to pay Smith $2,000 out of Batt’s share of the profits of the motel. Smith discovered the existence of the deed from Batt to Bernstein and also that the deed from Smith and Batt to Aman had not been recorded. He was informed by the escrow holder that the deed had been held up under instructions from Batt and that it had since been misplaced. It was in fact recorded the next day. However, several days following Smith’s conversation with the escrow company Aman and Smith joined in the filing of the present lawsuit.
 

 Judgment was rendered by the trial court in favor of plaintiffs and against defendants adjudging that Aman was entitled to an undivided one-third interest in and to the motel and vacant lot and that Smith was entitled to an undivided two-thirds interest in the same property. In its findings of fact the court found that the defendants Batt had never paid anything toward the purchase price of the property; that they had never rendered any services in connection with the purchase
 
 *183
 
 of the property; that there never was any agreement between the plaintiffs Smith and the defendants Batt under which said defendants were to receive any interest in the property for services rendered by Batt in connection with the purchase of the property; that at the time of the agreement to convey an undivided one-third interest in the property to Aman the defendants Batt never intended to convey such interest and that their representation to that effect was made by defendants Batt falsely, fraudulently and with intent to deceive and defraud; that at the time of their agreement with Smith defendants Batt never intended to execute and deliver their promissory note to the plaintiffs as they had represented they would; that such representation was a material one and was made with the intention that plaintiffs Smith rely upon it and that they did rely upon it in permitting the defendants Batt to have a record interest in the property; and that defendants Batt were guilty of fraud in connection with these matters.
 

 The court held that the plaintiffs did not have an adequate remedy at law and that in order to do equity in the case it was necessary to hold that all of the defendants (Batt and wife and Bernstein and wife) have not now and did not have from the very beginning any rights in the property; that due to the fraud practiced by defendants Batt the court declared that the defendants have held record title to the parcels of property as constructive trustees for the plaintiffs and that the plaintiffs are entitled to have their title quieted as against the defendants and that such title shall vest in the plaintiffs Aman as to an undivided one-third interest and Smith as to the remaining undivided two-thirds interest.
 

 Only defendants Batt appealed from the judgment of the court. They first contend that the findings with respect to the issues of fraud are not supported by substantial evidence and do not constitute actionable fraud. Actual fraud, as defined in section 1572 of the Civil Code, includes making a promise without any intention of performing it with intent to deceive another party or to induce him to enter into a contract. The court found that this is precisely what defendants Batt did.
 

 In the case of
 
 Cox
 
 v.
 
 Klatte,
 
 29 Cal.App.2d 150, 160-161 [84 P.2d 290], a deed to a piece of property induced by fraud on the part of the grantee was held by the court to be subject to cancellation. The property had been deeded based on a promise of the grantee which the grantee had made with
 
 *184
 
 no intention to perform. The court held that a single fraudulent representation is sufficient to support the judgment cancelling the deed, and with the consideration of other evidence, the subsequent failure to perform the promise on which the deed was based warrants the inference that the party did not intend to perform when the promise was made.
 

 Since there was more than ample evidence introduced in the trial of the case before us upon which to base its finding of fraud, such finding by the trial court is binding upon this court. Such a finding could be overthrown on appeal only when shown to be totally lacking in support by substantial evidence.
 
 (Cox
 
 v.
 
 Klatte, supra,
 
 29 Cal.App.2d 150, 160.)
 

 In the
 
 Cox case, supra,
 
 there was some indication from which the court could have concluded that the grantee had originally intended to keep the promise which she had made since there was a partial performance of the promise on her part over a period of five or six months. Yet the court found (p. 161) despite this evidence that she never intended to keep the promise when it was made based upon her subsequent conduct which in effect repudiated it.
 

 In the case before us there was no partial performance. In fact, the dilatory tactics on the part of the defendants could lead the court to but one conclusion. That is that the defendants Batt, having talked themselves into a profitable venture without the expenditure of any money or effort whatsoever, were doing their utmost to further defraud plaintiffs.
 

 “The theory of a constructive trust was adopted by equity as a remedy to compel one to restore property to which he is not justly entitled, to another. ... [T]he one whose property has been taken from him is not relegated to a personal claim against the wrongdoer . . .; he is given the right to a restoration of the property itself. The title holder is, therefore, said to be a constructive trustee holding title to the property for the benefit of the rightful owner, . . . [Citations.] ”
 
 (Bainbridge
 
 v.
 
 Stoner,
 
 16 Cal.2d 423, 428-429 [106 P.2d 423].)
 

 Defendants assert that there is inconsistency- in certain of the findings of the trial court. On the one hand they point out that the court found that plaintiffs did enter into a written agreement with defendants Batt whereunder upon payment by plaintiffs Aman of $20,000 into the escrow the properties would be conveyed one-third to each of the two plaintiffs and one-third to defendants Batt. On the other hand, there is no finding by the court that this agreement was ever
 
 *185
 
 rescinded and therefore they assert the finding of the court that defendants do not have, and did not have from the very beginning, any rights in the property is inconsistent. We find no inconsistency in the findings of the court. The evidence was undisputed that the parties had agreed each would take a one-third interest in the property upon consideration of each performing certain promises. But the court found that defendants Batt made their promises without any intention to perform them and in fact didn’t perform them. Therefore because of the fraud they had perpetrated on plaintiffs, the defendants are not entitled to any interest in the property.
 

 Defendants assert that a joint venture existed between the three parties which could only be terminated by an action for dissolution and an accounting. It is true that joint adventurers cannot sue one another at law to recover damages for breach of the joint venture agreement; their remedy is by suit in equity for dissolution and an accounting and settlement of the affairs of the joint adventure.
 
 (Cunningham
 
 v.
 
 deMordaigle,
 
 82 Cal.App.2d 620, 621 [186 P.2d 423].)
 

 The trial court in this case however found, with respect to the claimed existence of a joint adventure, “No specific finding is being made in regard to an alleged joint venture insofar as the plaintiffs and defendants are concerned for the reason that the Court has found that defendants Milton F. Batt and Suba Batt, D. Brandon Bernstein and Certa Bernstein are not now and never were from the beginning, entitled to any interest whatsoever in and to said parcels of real property.”
 

 As has been pointed out, based on substantial evidence the court found that the defendants Batt perpetrated a fraud upon plaintiffs, that they never intended to keep their promises in the first place and thus in effect no valid and binding joint adventure agreement was entered into.
 

 In the case of
 
 Long
 
 v.
 
 Newlin,
 
 144 Cal.App.2d 509 [301 P.2d 271], a similar contention was made by an alleged partner who asserted that one partner could not bring an action against another except for dissolution of the partnership. In that case, as in the case before us, the other alleged partner had determined he had been the victim of false and fraudulent representations. He elected to attack the very existence of the partnership in order to void the contract
 
 ab initio,
 
 in effect to proclaim that as between the partners there had never existed any copartnership. True, in that case the victim of the fraud proceeded under Civil Code section 1689, subdivision
 
 *186
 
 1, to rescind the contract of partnership, whereas in the case before us there was no formal rescission. However,
 
 Long
 
 v.
 
 Newlin, supra,
 
 is authority for the position taken by the trial court in the instant case that the basic rule that partners may not sue one another at law does not apply where it is found there has been no validly created partnership, or in our case joint adventure, from the beginning.
 

 In
 
 Staples
 
 v.
 
 Leidecker,
 
 216 Cal. 604, 607 [15 P.2d 514], the court stated, with respect to the claimed existence of a joint adventure, “. . . Inasmuch as the plaintiff has failed, and through no fault of the defendant, to perform the obligations imposed upon him as a condition precedent to the defendant’s performance under the contract, plaintiff is not in a position to charge the defendant with a breach thereof or to secure an accounting on the basis that the parties were engaged in a joint venture. In the absence of plaintiff’s preliminary performance of the obligations imposed upon him, the relationship which he seeks to establish necessarily could not arise under the terms of the contract as found by the trial court. The agreement between the parties hereto never having been consummated, there are present no rights of third persons to complicate the solution of the problem here presented.”
 

 Likewise, in
 
 Middleton
 
 v.
 
 Newport,
 
 6 Cal.2d 57, 62 [56 P.2d 508], the court declared, “It is, of course, entirely possible that an abandonment or dissolution of a partnership or joint adventure may take place by conduct inconsistent with its continuance, in spite of the fact that liquidation is not completed, or that some appearances of partnership continue. [Citations.] ”
 

 Similarly, in
 
 San Francisco Iron etc. Co.
 
 v.
 
 American Milling etc. Co.,
 
 115 Cal.App. 238, 251 [1 P.2d 1008], the court declared that it is well settled that the strict rules governing in eases of ordinary contracts have no application to eases of agreements such as joint adventurers where the party in whose behalf the rule is sought to be invoked first violated such relationship by acquiring interests antagonistic to his coadventurers, and thus prevented the accomplishment of the object for which the joint adventure was formed. In the latter ease the court found that the joint adventure agreement was breached by. the defendants at the very threshold of the enterprise by secretly negotiating for and purchasing the property on their own account.
 
 (San Francisco Iron etc. Co.
 
 v.
 
 American Milling etc. Co., supra,
 
 115 Cal.App. at p. 249.)
 

 In the case before us the court found upon substantial evi
 
 *187
 
 deuce that the defendants Batt in effect did nothing more than make a hollow promise which in their hearts they had no intention of keeping. This certainly created a material breach at the “very threshold of the enterprise, ’’ to borrow the expression of the court in the last-mentioned case. In their reply brief defendants concede that a deed secured by fraud is subject to cancellation. However, they assert the fraud must exist between the grantor and grantee. That such remedies, as prescribed in Civil Code section 1573 defining constructive fraud, can exist in other than grantor-grantee relationships, is evidenced by such cases as
 
 Rankin
 
 v.
 
 Satir,
 
 75 Cal.App.2d 691, 695 [171 P.2d 78], in which the one committing the fraud acquired title to the property at a trust deed foreclosure sale but was held to hold it as a constructive trustee for the person whom he had defrauded.
 

 Similarly, in
 
 Estrada
 
 v.
 
 Garcia,
 
 132 Cal.App.2d 545, 552 [282 P.2d 547], where a man and woman were living together without benefit of marriage and the man promised to acquire a parcel of property in the names of both his companion and himself, but actually acquired it in his own name alone, the court held him to be a constructive trustee for her share of the property.
 

 Defendants Batt assert that their interest in the property was absolute and that they did not hold as involuntary or constructive trustees for Smith. This contention is answered in the cases cited in this opinion to which reference has heretofore been made. As was stated in
 
 Sanguinetti
 
 v.
 
 Rossen,
 
 12 Cal.App. 623, 628 [107 P. 560], referring to implied trusts, resulting or constructive, “. . . Such trusts are creatures of equity, and take form whenever title is obtained by means of chicanery, deceit or other variety of fraud actual or constructive. In such cases mere forms will be disregarded, and equity, as handmaid of the law, will ascertain and act upon the substance of things, regarding that as done which should have been done. Devious and intricate methods may be employed, but the mind-searching, far-reaching vision of equity cannot be obscured by any pretense however ingenious, subtle or specious it may be. Equity abhors fraud in all of its guises, and renders abortive its shrewdest intrigues and machinations____”
 

 Judgment affirmed.
 

 Jefferson, J., and Balthis, J., concurred.