[Civ. No. 276.   Fifth Dist.   Mar. 11, 1964.]

LEROY LEE CROWDER, as Executor, etc., Plaintiff and Respondent, v. DARRYLE W. LYLE et al., Defendants and Appellants.

Mazzera, Snyder & DeMartini and Robert A. Haughwout for Defendants and Appellants.

Robert E. Laughlin for Plaintiff and Respondent.

CONLEY, P. J.—This is an appeal from a judgment quieting title in respondent, Leroy Lee Crowder as executor of the estate of Ida Belle Clark, deceased, to two parcels of land in Tuolumne County originally patented by the United States Government to Darryle W. Lyle and Edward Gremley, and more particularly described as lots 23 and 15 in section 32, Township 2 North Range 16 East, M. D. B. & M., according to the official plat on file in the Bureau of Land Management. These two lots were within the exterior boundaries of the Cherokee Placer Mining Claim filed by Joseph Sivori in 1897. Mr. Sivori and his successors in interest constructed thereon a large wooden building adapted for hotel purposes with necessary outbuildings; they used the premises as a family home and as a commercial vacation resort. Jessie Sivori inherited the property. In the years 1951 and 1952, Ida Belle Clark and her husband, Warren P. Clark, loaned $1,500 and $4,872 to Jessie Sivori evidenced by her promissory notes and secured by a deed of trust upon the mining claim. Mr. Clark subsequently assigned all of his interest to his wife.

Jessie Sivori died in 1954 and her father, Charles L. Crowder, was appointed administrator of the estate. The administrator agreed to sell the commercial resort, known as the "Totem Pole Lodge," to Ethel Weimer for $15,000; she took possession of the premises and later agreed orally to sell the entire parcel to Darryle W. Lyle, Virginia Lyle, Gertrude Gremley and Edward Gremley for the sum of $22,000; on May 31, 1956, an escrow was set up for the purpose of effectuating the sale and the prospective purchasers actually took possession of the resort in July of 1956; but they never completed the transaction or made payment of the agreed consideration.

About August 1, 1956, Ida Belle Clark gave due notice of default and of her election to sell under the deed of trust, but she died on August 13, 1956; thereafter, Leroy Lee Crowder, the plaintiff herein, was appointed executor of her estate. The second amended complaint in the first quiet title suit hereinafter referred to was based on allegations that the Lyles and the Gremleys agreed with plaintiff to carry out the terms of their agreement with Mrs. Weimer and to complete the purchase from plaintiff, and inasmuch as they would become the ultimate owners of the land, to apply to the United States Bureau of Land Management in their own names for leases and options to purchase lots 15 and 23 pursuant to the Small Tract Act of 1938. (52 Stat. 609, 43 U.S.C.A. § 682a.)

Edward Gremley and Darryle Lyle then filed applications with the land office in Sacramento for leases on the respective parcels with options to purchase; Gremley sought title to a 2.29-acre tract (lot 23), which included the "Totem Pole Lodge," and Lyle applied for an undeveloped tract of the same size adjoining Gremleys (lot 15); on November 1, 1957, the land office issued leases to them respectively with options to purchase.

In the meantime, the Cherokee Placer Mining Claim was sold under the terms of the deed of trust to respondent Crowder, as executor of the estate of Ida Belle Clark.

On April 29, 1958, the United States instituted contest 5430 in the Sacramento Land Office against Charles L. Crowder as administrator of Jessie Sivori's estate, Leroy L. Crowder, as administrator [sic] of Ida Belle Clark's estate, Edward Gremley, Gertrude Gremley, Darryle Lyle, Virginia Lyle, and Ethel Weimer, alleging that the Cherokee Placer Mining Claim was in fact nonmineral in character, and praying that the claim be adjudged null and void because minerals had not been found therein in sufficient quantities to constitute a valid discovery.

On May 26, 1958, the respondent Leroy Lee Crowder, as executor of the estate of Ida Belle Clark, filed action No. 8636 in the Superior Court of Tuolumne County against the Gremleys and Lyles seeking to quiet title to the Cherokee Placer Mining Claim and for unlawful detainer.

On June 30, 1958, the respondent Leroy Lee Crowder, as executor of the estate of Ida Belle Clark, filed a complaint against the Gremleys in the Sacramento Land Office (private contest 5461) alleging that the Gremleys had been guilty of fraud in making claim to a patent and seeking to set aside the application.

On July 18, 1958, the land office filed a final decision in contest 5430 declaring the Cherokee Placer Mining Claim null and void, because of its nonmineral character; in this connection, it should be noted that none of the defendants named in the contest made an appearance.

The Gremleys filed a supplemental answer in superior court action No. 8636, setting up the decision in land office contest 5430 as a bar to the action; and Leroy Lee Crowder, as executor, filed an amended complaint in the quiet title action alleging that, by reason of the agreements, acts, and omissions of the defendants, a constructive trust arose in favor of the plaintiff; in the amended pleading Crowder alleged that the defendants were let into possession of the land

and improvements within the Cherokee Placer Mining Claim as prospective purchasers under an oral agreement with Charles L. Crowder, administrator of the Sivori estate, and that it was agreed among the parties that the title should be perfected by applications to the United States under the Small Tract Act, in the names of the defendants as they would become the ultimate purchasers. A demurrer having been sustained to the amended complaint, Crowder filed a second amended complaint on April 16, 1959. The Gremleys answered. The cause was tried by the court sitting without a jury, and on June 29, 1960, the trial judge filed a memorandum opinion in which he expressed his conviction that the charges of fraud against the Gremleys and the Lyles were true. The findings include the court's determination of facts as follows:

"That it is true that prior to May, 1956, the administrator of the Jessie Sivori Estate had orally agreed to sell the property in question to one Ethel M. Weimer for the sum of $15,000.00; that the said Mrs. Weimer moved onto said property and remained there until July, 1956.

"That it is true that on or about July, 1956, the defendants were let into possession of said property by the administrator of the Jessie Sivori Estate and by Mrs. Weimer, as prospective purchasers and upon their oral promise to pay the sum of $22,000.00 for said property. ... that at said time the defendants were informed that the ownership of said property and improvements was by the possessory right of a mining claim. ... that it was thereupon agreed between the said Charles L. Crowder and the defendants that the fee title to the real property embraced within the description of said mining claim should be perfected by application to the United States Government under the Small Tracts Act; ... that it was further agreed that said application should be made in the names of the defendants inasmuch as the defendants intended to become the ultimate purchasers of said land and improvements.

"That it is true that pursuant to said agreement defendants did, on January 2, 1957, file applications with the Bureau of Land Management to acquire title to said land and improvements and did, by reason of said application obtain from the United States, in the name of defendants, a lease of said land and improvements with an option to purchase the same. ... that on or about the 25th day of April, 1957, plaintiff advised the defendants of plaintiff's interest in said prop-

erty and the defendants promised plaintiff and agreed with plaintiff to complete the purchase of said property as soon as defendants obtained title thereto under said Small Tracts Act. ... that at all times herein mentioned plaintiff relied upon defendants to complete the purchase of said improvements from plaintiff as soon as defendants obtained the fee title to said land from the United States.

"That it is true that prior to the commencement of this action, the defendants repudiated their said agreement to purchase said land and improvements and claimed, and they now claim, ownership thereof to the exclusion of plaintiff and plaintiff's predecessor in interest by reason of the said lease and option to purchase from the United States. ... that defendants have paid nothing to plaintiff or plaintiff's predecessor in interest on account of the agreed purchase price. ... that in reliance upon the agreements, as aforesaid, plaintiff and plaintiff's predecessor in interest permitted defendants to remain in possession of said land and improvements and to obtain said lease and option to purchase from the United States.

"That it is true that by reason of the premises defendants should be declared constructive trustees of said lease and option to purchase for the benefit of plaintiff."

The judgment was filed on August 22, 1960; it determined that any legal title or interest which defendants, or any of them, held in or to the property described by metes and bounds was held in trust for the plaintiff, and further directed that within 10 days thereafter the defendants should execute and deliver to plaintiff a quitclaim deed or other appropriate instrument conveying title in all of the real property to the plaintiff and that the defendants should be forever enjoined from asserting any right, title, or interest therein; the judgment continued by stating that to carry out the equitable principles inherent in the situation, the plaintiff should sell the property for the highest price obtainable within a reasonable time and distribute the proceeds of the sale as follows:

"(a) First, to plaintiff, the principal and interest due on the promissory notes described in plaintiff's complaint on file herein, plus accrued interest, plus the cost to plaintiff of the foreclosure, referred to in said complaint, and plus plaintiff's litigation costs herein, including an attorney's fee of $1,000.00.

"(b) Second, to those persons who made improvements to

said property, the amount due them for labor and materials (Plaintiff's Exhibit 8 herein), less a reasonable proportion of the attorney's fee allowed to plaintiff in (a) above.

"(c) Third, to the Estate of Jessie Sivori, deceased, the sum of $15,000.00, less the principal, interest, and litigation costs to be retained by plaintiff as in (a) above, and less a reasonable proportion of the attorney's fee allowed to plaintiff as in (a) above, and less the $4,000.00 paid by Ethel M. Weimer to the administrator of the Sivori Estate.

"(d) Fourth, to Ethel M. Weimer, the balance of the sale proceeds, less a reasonable proportion of the attorney's fees allowed to plaintiff as in (a) above.

"(e) Delinquent taxes are to be paid by plaintiff out of the sale proceeds and charged pro rata among the distributive shares of the several beneficiaries."

No appeal was taken from the judgment, and it became final.

The defendants failed to execute the deeds required by the judgment and the present action No. 9178 in Tuolumne County was filed by the plaintiff to establish that lots 15 and 23 were in fact within the area covered by the metes and bounds description in the earlier judgment in Tuolumne County case No. 8636.

The defendants appearing in the present suit were Darryle W. Lyle and Virginia Lyle, husband and wife, and Gertrude Abbott (formerly Gertrude Gremley) and Bonnie McDow, who had succeeded to any claim that Edward Gremley had in the property. Edward Gremley was also served, but he defaulted. Darryle W. Lyle and Virginia Lyle, Gertrude Abbott, and Bonnie McDow filed a cross-complaint asserting title in their own right to the lands involved; the Lyles alleged ownership of lot 15 and Mrs. Gremley and Mrs. McDow claimed title to lot 23.

As already stated, no appeal was taken by any of the defendants in case No. 8636. Actually, the central question to be determined in this suit is whether the judgment in case No. 8636 was valid. The trial court held that the earlier judgment was res judicata of all of the essential issues involved in the instant case and that the plaintiff was entitled to judgment in his favor just as soon as the two lots specifically described in the complaint were identified as being within the area described by metes and bounds in the first decree. The appellants, however, urge that the prior judgment was void and that because a void judgment is never res

judicata of any issue (*California National Supply Co.* v. *Flack,* 183 Cal. 124 [190 P. 634]; 29 Cal.Jur.2d, Judgments, § 219, p. 172), the present decree is unsupported by the evidence.

Appellants urge that the Superior Court of Tuolumne County did not have jurisdiction of the questions decided by it because the United States Bureau of Land Management has exclusive jurisdiction of all matters involving the issuance of title to public lands. It is, of course, clear that the bureau does have exclusive jurisdiction to issue patents for federal government land and to make a binding determination of fact with respect to conflicting claims to the issuance of the patents.

In *Gage* v. *Gunther,* 136 Cal. 338, 343 [68 P. 710, 89 Am. St.Rep. 141], it is said: "The land department of the United States has been created as the tribunal for determining the right under the laws of the United States of any person to receive a patent for any of the public lands, and that tribunal is vested with jurisdiction to determine all questions of fact that may arise in any controversy respecting such right. As a necessary result therefrom, the determination by this tribunal of any question of fact is conclusive upon all other tribunals wherever such questions may be presented." (See also: *Cameron* v. *United States,* 252 U.S. 450 [40 S.Ct. 410, 64 L.Ed. 659]; *Brown* v. *Hitchcock,* 173 U.S. 473 [19 S.Ct. 485, 43 L.Ed. 772]; *Ickes* v. *Underwood,* 141 F.2d 546 [78 App.D.C. 396]; *State of Utah* v. *Bradley Estates, Inc.,* 223 F.2d 129; *Best* v. *Humboldt Placer Mining Co.,* 371 U.S. 334 [83 S.Ct. 379, 9 L.Ed.2d 350]; *Potter* v. *Randolph,* 126 Cal. 458, 461 [58 P. 905]; *Thompson* v. *Basler,* 148 Cal. 646 [84 P. 161, 113 Am.St.Rep. 321]; *McLaren* v. *Fleischer,* 181 Cal. 607 [185 P. 967]; *Martin* v. *Bartmus,* 189 Cal. 87 [ 207 P. 550]; *Sanders* v. *Dutcher,* 44 Cal.App. 626 [187 P. 51]; *Bowen* v. *Hickey,* 53 Cal.App. 250 [200 P. 46]; *Wetsel* v. *Superior Court,* 119 Cal.App.2d, 703, 709 [260 P.2d 242].)

But we are not dealing here with a question of who has a right to the issuance of the patent as between one or more applicants, and the United States Government. This judgment involves the recognition of a constructive trust and the appropriate inquiry is whether or not the state court has jurisdiction to determine equitable rights and duties as between the person to whom the United States has issued a patent and some other person or persons with whom such patentee has had dealings and who makes claims against the

patentee. ■ We hold that a state court may determine equities as between a patentee and another with whom he has dealt and upon a proper evidentiary showing adjudicate that the patentee holds the legal title in trust for such other person. ■ The general rule is thus laid down in 40 California Jurisprudence 2d, Public Lands, section 114, pages 622-623: "One who is connected with the paramount source of title, or occupies a status that entitles him to control the legal title, may sue to have the legal title declared held in trust for him, and for a conveyance. ■ The general rule is that where a patent has issued as the result of fraud ... the patentee may be declared, in equity, to hold the legal title in trust for, and may be required to make a conveyance to, the person to whom the patent should have been issued."

In *Aurrecoechea* v. *Sinclair,* 60 Cal. 532, 545, the Supreme Court stated: "There is no doubt that where the party has obtained from the United States a patent to a tract of public land, which, in equity and good conscience, and by the laws which Congress has passed on the subject, ought, upon a true construction of those laws, to go to another who establishes a prior right to it, that a Court of equity will control the patent in favor of the prior equity, and compel a conveyance of it to the owner of the equity."

An interesting illustration of the principle that state courts may inquire into, and adjust, the equitable rights of the holder of legal title to personal property *vis-à-vis* other persons who have an equitable claim against him is furnished by the California holdings with respect to United States Savings Bonds. Under federal law, when a savings bond is issued to a specified person or persons an attempt to assign such bond to someone else is a nullity; the United States government has the exclusive right to regulate the legal title and it does not permit an assignment, but it has been determined nevertheless that the equitable rights and duties of the bond owner and of other persons with whom he has dealt may be inquired into and adjudicated by the state courts, and that, as a result, the holder of the legal title may be found to be a trustee for such other persons. (*Katz* v. *Driscoll,* 86 Cal.App. 2d 313, 322 [194 P.2d 822]; *Chase* v. *Leiter,* 96 Cal.App.2d 439, 452-454 [215 P.2d 756].)

A decree in equity establishing that a person who owns the legal title to land may hold it in trust for another is illustrated by the following cases: *Stewart* v. *Douglass,* 148 Cal. 511 [83 P. 699]; *Settembre* v. *Putnam,* 30 Cal. 490; *Martin* v.

448

*Bartmus, supra,* 189 Cal. 87; *Neet* v. *Holmes,* 25 Cal.2d 447 [154 P.2d 854].

An analogous situation is presented in cases in which a local court controls the respective rights and duties of litigating parties with respect to land situated in a foreign state; the local court in such circumstances has no power to affect legal title to the land directly by its judgment as such land is under the sole control of the foreign state; but the local court concededly has the right to compel parties under its jurisdiction to effectuate directed dispositions with respect to the land, including a holding of the legal title in trust. (*Promis* v. *Duke,* 208 Cal. 420, 428 [281 P. 613]; *Tomaier* v. *Tomaier,* 23 Cal.2d 754, 760 [146 P.2d 905]; *Chamberlain* v. *Wakefield,* 95 Cal.App.2d 280, 291-292 [213 P.2d 62]; *Tischhauser* v. *Tischhauser,* 142 Cal.App.2d 252, 255 [298 P.2d 551]; *Mills* v. *Mills,* 147 Cal.App.2d 107, 116 [305 P.2d 61]; *Tully* v. *Bailey,* 46 Cal.App.2d 195, 198-200 [115 P.2d 542]; *Beeler* v. *Beeler,* 193 Cal.App.2d 548, 550-551 [14 Cal.Rptr. 460].)

■ The court in the instant case clearly operated within the scope of its legitimate power in finding a constructive trust. In *Bainbridge* v. *Stoner,* 16 Cal.2d 423, 428-429 [106 P.2d 423], the general theory of a constructive trust is stated as follows: ''The theory of a constructive trust was adopted by equity as a remedy to compel one to restore property to which he is not justly entitled, to another. ... [T]he one whose property has been taken from him is not relegated to a personal claim against the wrongdoer. .. ; he is given the right to a restoration of the property itself. The title holder is, therefore, said to be a constructive trustee holding title to the property for the benefit of the rightful owner, ... [Citations.]'' *Aman* v. *Batt,* 205 Cal.App.2d 180, 187 [23 Cal.Rptr. 34] has the following to say: ''Defendants Batt assert that their interest in the property was absolute and that they did not hold as involuntary or constructive trustees for Smith. This contention is answered in the cases cited in this opinion to. which reference has heretofore been made. As was stated in *Sanguinetti* v. *Rossen,* 12 Cal.App. 623, 628 [107 P. 560], referring to implied trusts, resulting or constructive, '... Such trusts are creatures of equity, and take form whenever title is obtained by means of chicanery, deceit or other variety of fraud actual or constructive. In such cases mere forms will be disregarded, and equity, as handmaid of the law, will ascertain and act upon the substance of things, regarding that as done which should have been done. Devious and intricate methods may be employed, but the mind-search-

ing, far-reaching vision of equity cannot be obscured by any pretense however ingenious, subtle or specious it may be. Equity abhors fraud in all of its guises, and renders abortive its shrewdest intrigues and machinations. . . .' ''

The situation developed by the evidence in this case is illuminated by the following discussion in 4 Scott on Trusts (2d ed. 1956) section 499, page 3224: ''Even though there was no pre-existing fiduciary relation, and even though the defendant was not employed professionally by the complainant, and even though no continuing fiduciary relation was contemplated, yet if the defendant undertakes with the complainant to purchase property for him, and purchases the property for himself, he can be charged as constructive trustee of the property. Although the oral undertaking is not enforceable as a contract, because of lack of consideration or because the property is an interest in land, yet a fiduciary relation is created and the fiduciary will not be permitted to profit through a breach of his duty as fiduciary. By undertaking to purchase the property for the complainant, the relation of principal and agent is created. Such a relation arises where one person undertakes to act for and in behalf of another, even though the undertaking is gratuitous and oral. Accordingly, it is held that a person who undertakes to purchase land for another and who purchases it for himself is chargeable as constructive trustee of the property, even though the undertaking is gratuitous and oral.'' (See also: *Stromerson* v. *Averill*, 22 Cal.2d 808 [141 P.2d 732]; *Forbes* v. *Forbes*, 74 Cal.App.2d 936 [169 P.2d 661]; Rest., Restitution, § 194.)

It should be borne in mind that Lyle and Gremley applied for leases and patents to the lots 15 and 23 in their own names because under their contract they would ultimately have the right to complete title upon the payment of the agreed purchase price for the improvements to Mr. Crowder. Afterwards, they repudiated their undertaking, and their breach of faith was the source of the court's conclusion that a constructive trust arose.

All of the essential issues were decided in the first quiet title action and when that judgment became final, it formed the unimpeachable basis for a determination of the present case as a mere reaffirmation of what the court had already found.

The contention made by appellants that the federal government determined the very question at issue through its

dismissal of the private contest brought by Leroy Crowder against the Gremleys (No. 5461 in the Sacramento Land Office), is without merit, first, because the contest never actually went to trial as it was held in the proceeding that the document filed by Crowder was a protest against the issuance of a patent to Gremley covering lot 23 rather than a contest, and, secondly, because no attempt was made in the written decision of the acting manager of the Sacramento Land Office to decide the questions involved in the present litigation as between the Gremleys and Crowder. It is said in the opinion: "Insofar as Mr. Crowder's protest relates to compensation for improvements now used by the lessee, this appears to be a private dispute which may be resolved by private agreement, arbitration, or by a court of competent jurisdiction." It seems to us that this is equivalent to saying that the differences between the successors to the Gremleys and Crowder involved in the instant case do not enter into the question of the primary right to the issuance of the patent, and that, if they are unable to reach a mutual agreement concerning such conflicting contentions, they should have them adjudicated in a court action. That is exactly what was done in the instant case.

Another contention made for the first time in appellants' reply brief and therefore not entitled to consideration as no good reason is shown for the delay (*Monk* v. *Ehret*, 192 Cal. 186, 190 [219 P. 452]; *Duncanson-Harrelson Co.* v. *Travelers Indemnity Co.*, 209 Cal.App.2d 62, 70 [25 Cal.Rptr. 718]; *Wilson* v. *Board of Retirement*, 156 Cal.App.2d 195, 207 [319 P.2d 426]; 3 Witkin, Cal. Procedure, Appeal, § 155, pp. 2341-2342; 4 Cal.Jur.2d, Appeal and Error, § 488, p. 324) is that in case No. 8636 the Lyles were not served with a copy of the second amended complaint, and that a default, therefore, should not have been entered against them. It is not denied that they were originally properly served with process or that they were personally within the court's jurisdiction.

The amended pleadings in a lawsuit should, of course, be served on all adverse parties even those who have not filed an appearance in the case after original service of process upon them. (Code Civ. Proc., §§ 432, 472; 39 Cal. Jur.2d, Pleading, § 285, pp. 403-407.) But appellants made no attempt to prove that service of the amended pleading in the former case was not made on the Lyles. It is true that the file in case No. 8636, which was received in evidence, does not affirmatively show by endorsed admission of service

or affidavit that copies of the amended pleading were delivered to them. But it does not necessarily follow that there was no service because there was no proof of service in the file. Appellants have not accomplished their burden of proof and have wholly failed to establish their claim.

The judgment is affirmed.

Brown (R. M.), J., and Stone, J., concurred.

A petition for a rehearing was denied April 8, 1964.